In this case, the court of appeal upheld Louisiana laws which unconstitutionally disenfranchise its citizens on probation or parole following a felony conviction. Because this court now denies plaintiffs' writ application, that opinion is allowed to stand and these citizens will continue to be excluded from our democratic process.
Article 1, § 10(A) of the 1974 Louisiana Constitution provides for the constitutional right to vote:
Right to Vote. Every citizen of the state, upon reaching eighteen years of age, shall have the right to register and vote, except that this right may be suspended while a person is interdicted and judicially declared mentally incompetent or is under an order of imprisonment for conviction of a felony . (Emphasis added).
This section was adopted by the Louisiana Constitutional Convention on September 8, 1973, ratified by the people of Louisiana in 1974, and became effective on January 1, 1975. When the 1974 Constitution was adopted, the former provisions of the 1921 Constitution, which permanently deprived persons of the right to vote upon the conviction of a felony, were repealed. Thus, Article 1, § 10(A) expanded the constitutional right to vote, and specifically provided only a temporary suspension of that right while a citizen is under an order of imprisonment for conviction of a felony.
The Legislature thereafter enacted the Election Code, which included statutes that had the effect of limiting the constitutional right to vote. Being challenged by *576 the plaintiffs in this case are La. R.S. 18:2(8) and La. R.S. 18:102(A)(1) :
La. R.S. 18:2. Definitions
(8) 'Under an order of imprisonment' means a sentence of confinement, whether or not suspended, whether or not the subject of the order has been placed on probation, with or without supervision, and whether or not the subject of the order has been paroled.
La. R.S. 18:102. Ineligible persons
A. No person shall be permitted to register or vote who is:
(1) Under an order of imprisonment, as defined in R.S. 18:2(8), for conviction of a felony; ...
In upholding the constitutionality of these statutes, the court of appeal explained that the constitution specifically limits the fundamental right to vote while convicted felons are under an "order of imprisonment." The court found the meaning of "under an order of imprisonment" is unambiguous and that a convicted felon serving a term of probation or parole is clearly under an order of imprisonment because he is still in a custodial setting and still serving a portion of a criminal sentence. I cannot agree. In my view, incarceration must be distinguished from parole and probation, and a criminal sentence does not equate to an order of imprisonment. In fact, our Code of Criminal Procedure clearly makes distinctions between incarceration on one hand, and parole and probation on the other hand, while the phrase "order of imprisonment" does not appear once. See , e.g. , La. R.S. 15:529.1(c). Notably, the phrase "order of imprisonment" was found in Article 822 of our former Code of Practice, which set forth grounds for habeas relief. That article authorized relief when there was a deficient "order of imprisonment." See , e.g., State v. Fenderson , 28 La. Ann. 82, 83-84 (1876). Because habeas relief presupposes incarceration, the phrase "order of imprisonment" has clearly long been equated to incarceration. Additionally, there is support from contemporary commentators that the word choice of "order of imprisonment" in Article 1, § 10(A) of our constitution was not intended to exclude parolees and probationers. Professor Lee Hargrave, constitutional scholar and consulting expert during the 1973 Constitutional convention explained in a 1974 law review article:
The word choice, 'under an order of imprisonment,' may seem unusual; 'imprisoned' would be simpler and more direct. The reason for the choice was to overcome an objection that an escapee would not be 'imprisoned' and thus not within the exception. That choice of words does not prevent a person on probation or parole from voting since such a person is not under an order of imprisonment.
The Declaration of Rights of the Louisiana Constitution of 1974 , 35 La. L.Rev. 1, 34 (1974). Parolees and probationers are not inmates in a custodial setting. While parolees and probationers are under the threat of imprisonment, they are not under "orders of imprisonment." Parolees and probationers must commit some volitional act or omission to trigger the custodial sentence and a return to physical custody. Thus, I find the plain meaning of "under an order of imprisonment" in Article 1, § 10(A) of our constitution means a person is incarcerated in prison.
There is no legitimate reason for disenfranchising these citizens. Voting is a fundamental right in America, yet tens of thousands of Louisiana citizens are impacted by Louisiana's felony disenfranchisement laws. In 1969, there were 6,740 people on probation or parole across the state. Today, that number has increased to approximately 71,000 people who are on probation or parole, twice the number of *577 people actually incarcerated in the state. Citizens on probation or parole in Louisiana contribute to our state in various ways. These citizens work, pay taxes, raise families, and volunteer in their communities, as evidenced by the diverse group of representative-citizens who sought relief in this case. This representative group include a Vietnam War veteran, a construction worker, a law school graduate, a college graduate, two deacons, a hospice volunteer, and a minister. Yet these tax-paying citizens have no voice in the political life of their communities and are excluded from our democratic process because they are denied the right to choose their elected officials. This problem is not unique to Louisiana. Six million Americans cannot vote due to a felony conviction. Felony disenfranchisement rates vary by state, and most have instituted a wide range of disenfranchisement laws and policies. Only Maine and Vermont do not restrict the voting rights of people with a felony conviction. The twelve most extreme states restrict voting rights even after a person has served his or her prison sentence and is no longer on probation or parole. Notably, people of color are disproportionately impacted by these voting restrictions. One of every thirteen African-Americans has lost their right to vote due to criminal disenfranchisement laws.
I am encouraged that in recent years there has been increased public awareness of the problem of felony disenfranchisement. This has resulted in some successful state-level reform efforts. Since 1997, twenty-four states have modified felony disenfranchisement laws and regulations to expand voter eligibility or inform such persons of their voting rights. Because of these efforts, an estimated 840,000 citizens have regained their right to vote.[1]
Finally, I recognize that the Louisiana Legislature recently amended La. R.S. 18:102(A)(1) to specifically provide an exception to voter registration ineligibility for certain probationers and parolees. The amendment provides, in relevant part:
A. No person shall be permitted to register or vote who is:
(1)(a) Under an order of imprisonment, as defined in R.S. 18:2(8), for conviction of a felony; or, except as provided in Subparagraph (b) of this Paragraph.
(b) Except as provided in Subparagraph (c) of this Paragraph, a person who is under an order of imprisonment for conviction of a felony and who has not been incarcerated pursuant to the order within the last five years shall not be ineligible to register or vote based on the order if the person submits documentation to the registrar of voters from the appropriate correction official showing that the person has not been incarcerated pursuant to the order within the last five years.
(Emphasis added)
2018 La. Sess. Law Serv. Act 636 (H.B. 265). While I am in favor of this attempt to restore voting rights to probationers and parolees, I am of the opinion that the clear language of our constitution already provides the right to vote to all probationers *578 and parolees because they are not incarcerated. Further, while this amendment restores voting rights to some of these citizens, the disenfranchisement problem remains because any probationer or parolee who has been incarcerated within the last five years will still not be allowed to vote.
In opposing plaintiffs' writ application in this court, the state argued that this amendment made the plaintiffs' legal challenge moot. I find no merit to this argument. The amendment does not directly address the challenge in this case which turns on the legal interpretation of "order of imprisonment." Moreover, the amendment impacts only a portion of the citizens covered by this legal challenge, and will not have an impact on those citizens until March of 2019. Thus, all probationers and parolees will still be disenfranchised and not able to vote during the November 2018, December 2018, or March 2019 elections. And, because the amended law provides for a five-year waiting period, numerous citizens on probation and parole will continue to be disenfranchised even after the amended law goes into effect.
For these reasons, I find La. R.S. 18:2(8) and 18:102(A)(a) unconstitutionally restrict the right to vote of parolees and probationers, in violation of Article 1, § 10(A) of the Louisiana Constitution. Thus, I would grant plaintiffs' writ application.

Statistical figures stated in this dissent were obtained from:
• Louisiana Dept. of Corrections, Fact Sheet, March 31, 2017; https://www.doc.la.gov/media/1/Briefing%20Book/Apr_17/p.p.apr.17.pdf
• The Sentencing Project, Felony Disenfranchisement , https://www.sentencingproject.org/issues/felony-disenfranchisement/
• Brennan Center for Justice, Racism & Felony Disenfranchisement: An Intertwined History , https://www.brennancenter.org/publication/racism-felony-disenfranchisement-intertwined-history